T. J. THOMPSON ET AL. *v.* NANCY A. BATTS ET AL.

(Filed 24 February, 1915.)

1. **Estates—Remainders—Heirs—Children.**

   While as a general common-law rule, subject to some exceptions, a conveyance of an estate for life in lands to another, with remainder to the heirs of the grantor, could not divest the grantor of the fee, under the rule that *nemo est hæres viventis,* this does not prevail under the provisions of the Revisal, sec. 1583, that "any limitation by deed, will, or other writing to the heirs of a living person shall be construed to be the children of such person, unless a contrary intention appear, by the deed or will."

2. **Same—Deeds and Conveyances—Interpretation of Statutes.**

   A conveyance of land in contemplation of marriage, and in lieu of dower, to M., "to descend to the heirs of the body of the said M. in fee simple, the issue of such marriage, and on failure of issue to revert to

the heirs of" the grantor, providing also for the year's support of the grantee and that she shall receive a child's part of his personal estate: *Held*, the grantor, from the construction of the instrument, did not anticipate that he would survive his wife, or that there was a possibility of reverter to him; and that the "reverter" to his heirs, under Revisal, 1583, meant to his children after the death of his wife and the nonhappening of the stated contingency.

APPEAL by plaintiffs from *Ferguson, J.*, at November Term, 1914, of WILSON.

Proceeding for partition of a tract of land which originally belonged to Alfred Thompson, who was twice married.

He had children by the first marriage, and no children by the second marriage.

On 6 February, 1879, in contemplation of his second marriage, he executed a deed to his intended wife, Martha Jane, conveying the land in controversy for life, and with the following limitations: "The aforesaid tract of land to descend to the heirs of the body of said Martha Jane in fee simple, the issue of such marriage, and on failure of issue to revert to the heirs of said Thompson."

Alfred Thompson died before his wife, leaving those represented by the plaintiffs as his heirs, and also leaving a will in which he devised the land to those represented by the defendants.

His Honor held that upon the death of Martha Jane without issue the title reverted to Alfred Thompson and passed to the defendants by his will, and entered judgment accordingly, and the plaintiffs excepted and appealed.

*F. A. & S. A. Woodard, Jacob Battle, Winston & Biggs, and R. C. Strong for plaintiffs.*

*W. A. Finch and H. G. Connor, Jr., for defendants.*

ALLEN, J. The plaintiffs contend that the words in the deed "the heirs of said Thompson" mean children, and that they take by way of contingent remainder, while the contention of the defendants is that the word "heirs" being used in connection with the name of the grantor, there can be no remainder, upon the familiar maxim *nemo est hæres viventis*, and that upon the happening of the contingency the estate reverted to the grantor and passed to them under his will.

This position of the defendants seems to have prevailed at common law, the principle being that as no one could be heir to the living the attempted limitation to the heirs of a living person was void, and being void, upon the happening of the contingency and the determination of the intermediate estate there was a reverter to the grantor.

Ferne says, page 51: "A limitation to the right heirs of the grantor will continue in himself as the reversion in fee. As where a fine was

levied to the use of the wife of the co-user for life, remainder to the use of B. in tail, remainder to the use of the right heirs of the co-user, it was adjudged that the limitation of the use to the right heirs·of the co-user was void, for that the old use of the fee continued in him as a reversion."

In *Read and Morpeth v. Evington,* Moor K. B., 284, it was ruled that "If a man seized in fee make a feoffment to the use of A. in tail or for life, remainder to the use of his own right heirs, the land upon the death of A. without issue returns to the feoffor as his ancient reversion, and does not rest in his right heir as a remainder by purchase."

Sir Edward Coke says: "If a man make a gift in tail, or a lease for life, the remainder to his own right heirs, this remainder is void and he hath the reversion in him, for the ancestor during his life beareth in his body (in the judgment of law) all his heirs." Co. Litt., 22.

In Hargrave and Butler's notes (1 Am. Ed., from 19 London Ed. of 1853), one of the notes to this section states the following case, being note 3 : "Feoffment to the use of a feoffee for forty years, remainder to B. in tail, remainder to the right heirs of the feoffor. It is the old reversion, and the feoffor may devise it; for the use returned to the feoffor for want of consideration to retain it in the feoffee till the death of the feoffor." See, also, 2 Wash. Real Property, 692, and *Robinson v. Blankinship,* 92 S. W., 854, 24 A. and E. Enc. L., 398.

The· same principle is recognized in *King v. Scoggin,* 92 N. C., 99, where the Court says: "It is true, remainders are created by deed or writing, but the estate is sometimes created so that what is called a remainder is, in effect, only a reversion; as, for instance, when an estate is given to one for life, remainder to the right heirs of the grantor (2 Washburn on Real Property, 692; Burton on Real Property, 51), and this must be the kind of remainder classed with reversions which go to the donor or to him who can make himself heir to him."

This rule to the effect of using the word "heirs" in connection with a living person was not invariable at common law, as is pointed out by *Justice Walker* in *Campbell v. Everhart,* 139 N. C., 503. He says: "It appears to have been established by the authorities that, *prima facie,* the word 'heir' should be taken in its strict legal sense, but if there was a plain demonstration in the will that the testator used it in a different sense, the court would assign that meaning to it, what was sufficient to show that the testator did not intend that it should have its technical construction depending largely upon the language employed in connection with it and the circumstances under which the word was used. Broom's Legal Maxim (8 Ed.), 521, marginal page 523. It was likewise held in the case of a will that the rule had no place, if the testator knew of the existence of the parents and intended his devise to take effect during his life. Broom, 524. . . . But the maxim was also extended to

deeds, and a limitation (the word is here used in the sense of conveyance) 'to the heirs of a person' who is living was held to be void for uncertainty, as no one can in any proper sense be the heir of a living person, and it could not, therefore, be known who were to have the benefit of the conveyance; but it was likewise the rule in regard to a deed that, if anything appeared on its face to indicate that the grantor used the word 'heirs' as *designatio personarum,* or if a preceding estate was created so as to make the limitations to the heirs of the living person a contingent remainder, depending for its vesting upon the event of the death of the ancestor before the life estate terminated, the word 'heirs' was construed to mean children."

Assuming, however, that the principle prevails with us unimpaired, except as changed by statute, it remains to consider the effect of Revisal, 1583, which was adopted in this State in 1827 and reads as follows: "Any limitation by deed, will, or other writing to the heirs of a living person shall be construed to be to the children of such person, unless a contrary intention appear by the deed or will."

The learned counsel for appellee, adverting to the position of the plaintiffs that the word "heirs" in the deed means children under the statute, says: This would possibly have been so had there been no intervening estate conveyed, but an estate having been conveyed to Martha Jane Edmundson with the contingent limitation over, which possibly might vest and thereby defeat any estate in the heirs of Alfred Thompson, would take this out of the terms of the statute; and in support of his view he relies on *Jones v. Ragsdale,* 141 N. C., 200; *Marsh v. Griffin,* 136 N. C., 334.

We do not agree with counsel that the rule of construction declared by the statute does not operate when an intervening estate is conveyed, nor do we think the authorities cited support this contention, but that the effect of the decisions is that where there is a *conveyance* to a living person, with a limitation to his heirs, the statute is not applicable, which is not our case, because here the limitation is to the heirs of the *grantor* and not to the heirs of the grantee.

The words in the habendum in the *Marsh case* were: "To her, the party of the second part, her heirs and assigns, during her natural life, and at her death then to belong to her bodily heirs, to have and to hold in fee simple forever," and the Court said: "The contention that this deed gave her only a tenancy in common with her children is unfounded. The Code, sec. 1329, providing that a limitation 'to the heirs of a living person shall be construed to be the children of such person,' applies only when there is no precedent estate conveyed to said living person, else it would not only repeal the rule in *Shelley's case,* but would convert every conveyance to 'A. and his heirs' into something entirely different from what those words have always been understood to mean."

This language of the Court was quoted with approval in the *Jones case* and applied to a conveyance to "Zilphia S. Jones and her heirs by her present husband, Levy Jones, the land in controversy, .. . . to have and to hold the said land and appurtenances thereunto belonging, to the said Zilphia Jones and her heirs by her present husband, and assigns, to her only use and behoof."

We are therefore without decision upon the statute upon the facts presented here, and as the case of the defendant rests upon the position that the limitation in the deed is to the heirs of a living person, we must give effect to the statute and hold that "heirs" "shall be construed to be the children of such person," as no contrary intent appears in the deed.

An examination of the entire deed indicates very clearly that the grantor did not anticipate that he would survive his wife, or that there was a possibility of reverter to him.

He conveys the land in lieu of dower, and immediately following the clause we have been considering provides: "That the said Martha Jane shall have one year's provision for self and family out of the personal estate of said Thompson at his death, to be set apart to her in the usual way; and also two feather beds, now her own; in addition thereto, it is agreed that the said Martha Jane shall receive a child's part of the personal estate of said Thompson at his death. And should said Thompson hereafter acquire any real estate, the said Martha Jane may dower on the same."

Upon careful consideration of the case, being of opinion that heirs is to be construed children, and as such they take by way of contingent remainder, the judgment is

Reversed.